IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-50424
Summary Calendar
_____


CAROL A. SQUIRE

                                    Plaintiff-Appellant,

        versus


USAA LIFE INSURANCE COMPANY

                                    Defendant-Appellee.



--------------------
Appeal from the United States District Court
for the Western District of Texas
--------------------
January 24, 1997

Before GARWOOD, JOLLY, and DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

        Carol A. Squire (Squire) appeals the district court's grant of

summary judgment to employer USAA Life Insurance Company (USAA) in

her sexual harassment lawsuit.  We affirm.

## Facts and Proceedings Below

        Squire was at all times pertinent employed as a reinsurance

specialist in USAA's Underwriting Systems and Support Department in

San Antonio.  In July of 1994 Lew Lux (Lux) was transferred into

[*]     Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Squire's department.[1]  Although Lux, as Squire's immediate supervisor, was responsible for preparing a performance appraisal which could affect Squire's salary, there is no evidence that he exercised any authority to hire, fire, or discipline any USAA employees.

Soon after Lux's arrival in Squire's department, he began making salacious comments about Squire's appearance and dress. Lux also inquired about Squire's personal life and expressed a desire to ask her out on a date. Lux's behavior included insulting comments about the appearance of other women and frank references to his own sexual desires.

This conduct occurred on occasion in the presence of Squire's co-workers. Squire avers that "Bessie" and Laura Calderon, whose desks were adjacent to Squire's, often overheard Lux's lewd conversations with Squire. Squire also claims that at "unit meetings" Lux, who ran the meetings, would ask her whom she was dating in front of her co-workers. Despite the fact that Lux allegedly harassed Squire on a daily basis and at times in the presence of her co-workers, Squire did not complain about or report

---

[1]    Deposition testimony reveals that prior to this transfer Lux was investigated by USAA's Employee Relations department for having made lewd remarks to female employees in a different department of USAA. Due to a supposed improvement in Lux's behavior, however, the results of this investigation were never formalized and no formal disciplinary action was taken. Lux was nonetheless interviewed by Marva Smith of Employee Relations who, despite Lux's denial of any wrongdoing, counseled him regarding the inappropriateness of bawdy language or behavior in the workplace and USAA's policy proscribing sexual harassment.

Lux's behavior to anyone in management prior to November 15, 1994.

On November 15, 1994, Squire claims that Lux encountered her in the hallway and told her "I'm married and I lay next to it every night, but I think you probably get it more than I do." This comment was followed by several minutes of conversation regarding the inadequacy of Lux's sexual relationship with his wife. Immediately after this encounter Squire approached Mike Belko, a USAA manager, informed him of Lux's behavior towards her, and told him that she felt threatened by the escalating nature of Lux's harassment. Belko recommended that Squire report Lux's conduct to the Human Relations department immediately; Squire, however, decided against taking any immediate action, and asked Belko to remain silent until she reached a decision on how she would proceed.

At around 3:00 p.m. on November 17, 1994, the underwriting department employees gathered for an office turkey raffle, a fundraising exercise. Squire was in charge of the fundraiser and had collected the contributions for the raffle. Lux's name was selected in the first drawing, but Ray Dinstel, Vice President of Life/Health Underwriting and System Support and Lux's immediate supervisor, told the drawer to replace Lux's name and draw again because Lux was not present. At approximately 4:45 p.m. Lux returned to the office area upset that he had not received the raffle prize. He approached Squire, who had collected the contributions, and demanded his money ($10) back. After receiving

his money, Lux initially left Squire's work area; Lux, however, soon returned, placed the money down the front of Squire's dress, and walked away. Prior to this incident, Lux had never committed any inappropriate touching of Squire (or anyone else).

At this time USAA Director Warren Camarano came upon the scene. Seeing Squire in tears, he attempted without success to detain Lux. Later that day Squire received a phone call from Dinstel, then at a business meeting in Austin, who told her that he had been informed about the incident and wished to meet with her and discuss the matter the next morning.

At 8:00 a.m. on November 18, 1994, Squire met with Dinstel and representatives of Employee Relations, including Lux's former supervisor; at this meeting she related the entirety of Lux's treatment of her over the preceding months. Following this interview, Squire gave two written statements at the Employee Relations office, one regarding the November 17 incident and the other concerning Lux's previous behavior towards her. Craig Vrazel of Employee Relations told Squire that Lux was being placed on administrative leave and that arrangements were being made to deactivate Lux's identification card and deny him access to the USAA office building. Vrazel also provided Squire and her family with security from Pinkerton Security and arranged for Squire to see a psychiatrist, Dr. Theresa Valls, that afternoon. After seeing Valls, Squire returned to her office and left a note for Dinstel stating that she would not be in on Monday or Tuesday and

4

that she intended to start her vacation, as planned, on Wednesday, November 23, 1994.

Employee Relations began an immediate investigation into Lux's conduct, interviewing Lux and obtaining a statement from Camarano the day after the raffle incident. On Monday, November 21, 1994, Employee Relations took a written statement from Lux and interviewed Squire's co-workers. On Tuesday, November 22, 1994, Belko provided Employee Relations with a statement concerning his November 15 meeting with Squire. On Wednesday, November 23, 1994, Dinstel recommended that Lux's employment be terminated. The following Thursday (Thanksgiving) and Friday were holidays for USAA employees; on Monday, November 28, 1994, Dinstel announced that Lux's employment had been terminated by USAA.

On August 9, 1995, Squire, still employed by USAA in its San Antonio Underwriting Systems and Support Department, filed this suit against USAA under Title VII, 42 U.S.C. § 2000e *et seq.*, and Texas common law negligence. On April 11, 1996, five days after the April 6, 1996, close of the extended discovery period, USAA moved for summary judgment. On May 8, 1996, the district court entered a memorandum opinion and order granting USAA's motion. Squire timely appeals. We affirm.

## Discussion

"[T]he party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not *negate*

5

the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original) (citations omitted) (internal quotation marks omitted). If the movant makes such a showing, the burden then shifts to the nonmovant to go beyond the pleadings and designate, by competent summary judgment evidence, specific facts which demonstrate genuine triable issues. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553-2554 (1986). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations omitted) (internal quotation marks omitted). In reviewing a district court's grant of summary judgment, we consider the record *de novo*. *Wittorf v. Shell Oil Co.*, 37 F.3d 1151, 1154 (5th Cir. 1994).

Squire seeks damages from USAA for being subjected to a hostile work environment created by Lux's abusive behavior.[2] *See Harris v. Forklift Systems, Inc.*, 114 S.Ct. 367 (1993). On appeal Squire stresses that her lawsuit targets the period prior to November 17, 1994, *i.e.*, the day of the "turkey raffle" incident. She bases USAA's liability upon the contention that USAA should have discovered Lux's harassment sooner, sparing her the embarrassment and humiliation which ultimately ensued.

---

[2] Thus, we do not deal with any instance of *quid pro quo* harassment in this case. *See Jones v. Flagship Intern.*, 793 F.2d 714, 721-722 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 952 (1987).

"To state a claim under Title VII for sex discrimination based on a theory of a hostile work environment, a plaintiff must prove: (1) that she belongs to a protected class; (2) that she was subject to unwelcome harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition or privilege of employment; and (5) *that the employer knew or should have known about the harassment and failed to take prompt remedial action.*" *Waymire v. Harris County, Tex.*, 86 F.3d 424, 428 (5th Cir. 1996) (citations omitted) (emphasis added). Squire does *not* contend that Lux, given the limited scope of his supervisory authority, was the sort of managerial employee whose conduct should be directly or *per se* imputed to USAA. *See Long v. Eastfield College*, 88 F.3d 300, 306-307 (5th Cir. 1996); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.), *cert. denied*, 115 S.Ct. 574 (1994); *Deal v. State Farm County Mutual Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir. 1993); *Harvey v. Blake*, 913 F.2d 226, 227-228 (5th Cir. 1990). The district court granted USAA summary judgment because Squire had failed to present any competent evidence regarding the fifth prong, *i.e.*, actual or constructive knowledge coupled with a failure to respond to the harassment promptly and adequately. We consider in turn Squire's contentions that the district court erred in making this determination.

Squire argues first that the "knew or should have known" standard applied by the district court was an improper legal

standard.   Squire relies upon the Equal Employment Opportunity Commission's self-governing regulation, found at 29 C.F.R. § 1604.11(c), which states in pertinent part that "an employer ... is responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence."  Squire contends that under this authority she is relieved of having to show that USAA enjoyed actual or constructive knowledge of Lux's harassment.[3]

Because Congress gave the EEOC no authority to promulgate rules or regulations under Title VII,[4] we must give only a limited deference to EEOC rules and regulations.  *E.E.O.C. v. Arabian American Oil Co.*, 111 S.Ct. 1227, 1235 (1991); *Greenlees v. Eidenmuller Enterprises, Inc.*, 32 F.3d 197, 200 (5th Cir. 1994). In determining the extent of the deference owed, we look to "the

---

[3]     The following paragraph of this regulation, part 1604.11(d), posits a constructive knowledge threshold for employer liability when the complained of sexual harassment occurs solely among "fellow employees."  Thus, the only real disagreement between our standard of employer liability and that of the EEOC involves lower-ranking managers and supervisors without any meaningful authority to hire, fire, or discipline.  *See* Note 3, *supra*.

[4]     Section 1604.11 was promulgated under the authority of 5 U.S.C. § 7301, which formalizes the President's power to "prescribe regulations for the conduct of employees in the executive branch." Thus, section 1604.11 is at best a directive to Commission members regarding the guidelines *they* should use in considering Title VII matters brought before the Commission.

thoroughness evident in [the Commission's] considerations, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *E.E.O.C.*, 111 S.Ct. at 1235, *quoting Skidmore v. Swift & Co.*, 65 S.Ct. 161, 164 (1944). In addition, "we will not defer to the EEOC's construction of its authority when the plain language of the statute and precedent squarely contradict the position advanced."  *Greenlees*, 32 F.3d at 200.

In *Meritor Sav. Bank, FSB v. Vinson*, 106 S.Ct. 2399 (1986), the EEOC, as *amicus curiae*, argued that in "hostile work environment" cases when an employer has in place a system for reporting on-the-job sexual harassment (as USAA did) an actual knowledge standard should govern the imposition of employer liability.  *Vinson*, 106 S.Ct. at 2407-2408.  The Supreme Court pointed out the inconsistency of this proffered rule and section 1604.11(c)'s strict liability standard, but declined to create a standard for liability in such cases.  *Id*. at 2408.  Rather, the Supreme Court pretermitted the issue, stating only that, in accordance with the statutory language, "Congress wanted courts to look to agency principles for guidance in this area."  *Id*.  *See also Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1015 (8th Cir. 1988) ("42 U.S.C. § 2000e(b), suggests that Congress did not intend to hold employers strictly liable for the acts of their supervisors").

Our precedent (and the actual or constructive knowledge standard) has evolved out of an attempt to comply with the mandate that "agency princples" be consulted to fashion rules of employer liability in hostile workplace lawsuits.  The EEOC regulation, on the other hand, predates our precedent but provides for strict liability.  Furthermore, the EEOC's willingness to broach alternative standards to the Supreme Court in *Vinson* suggests that the Commission may not believe that the section 1604.11(c) standard should govern in hostile work environment cases.  Finally, we note that a large majority of circuits apply the actual or constructive notice standard to hostile workplace claims under Title VII. *Spicer v. Commonwealth of Virginia, Dept. of Corrections*, 66 F.3d 705, 710 (4th Cir. 1995) (en banc); *Murray v. New York University College of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995); *Nichols v. Frank*, 42 F.3d 503, 508 (9th Cir. 1994); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803-804 (6th Cir. 1994); *Baker v. Weyerhaeuser Co.*, 903 F.2d 1342, 1345-1346 (10th Cir. 1990); *Vance v. Southern Bell Tel. and Tel. Co.*, 863 F.2d 1503, 1512-1513 (11th Cir. 1989); *Hall*, 842 F.2d at 1015-1016.  The cited EEOC regulation, which predates this Circuit's precedents, provides no basis for this panel to depart from this Circuit's established Title VII law.  The district court applied the correct legal standard.

Squire next argues that USAA's knowledge that a prior

10

complaint of harassment had previously been made against Lux, *see* note 1, *supra*, created a duty on USAA's part to be extra vigilant against future harassment by Lux. Squire argues that she was the victim of USAA's breach of that duty and that this fact should count towards making up, at least in part, her *prima facie* case. Squire relies upon our prior decision in *Cortes v. Maxus Exploration Co.*, 977 F.2d 195 (5th Cir. 1992), for the proposition that an employer should take remedial action to eliminate a hostile work environment as soon as that employer has knowledge of previous sexually harassing conduct which may be repeated if the offender is given the opportunity.

We find these arguments unconvincing. In *Cortes*, the plaintiff complained persistently about harassment by one Acero, harassment that continued until she was transferred to another department. Due to a reorganization of its business, however, the plaintiff's employer subsequently decided to transfer her back into a situation where Acero would be her immediate supervisor. We found that "[e]ven in light of the strong evidence that Acero had sexually harassed Cortes when she was under his supervision and that when given the opportunity, he had continued to do so even after she was transferred out of his department, [the employer] transferred Cortes to this sexually abusive department." *Cortes*, 977 F.2d at 199.

The facts of *Cortes* do not support the proposition broached by

11

Squire. Rather, they demonstrate only *actual notice* to an employer regarding harassment *of the same employee* over *an extended period of time*. Contrary to Squire's urgings, nothing in our jurisprudence suggests the existence of the "duty" she proposes, and we decline Squire's invitation to create one under the facts of this case. The prior complaint against Lux was resolved amicably and without formal proceedings because of a perceived change in Lux's outlook and behavior. In addition, Squire had no knowledge of the prior complaint against Lux until after this lawsuit was initiated. Under these circumstances, the company was justified in believing that its action was sufficiently calculated to end Lux's harassing behavior and had no reason to consider itself "on notice" that Lux might harass someone else in the future. *Murray*, 57 F.3d at 250; *Baker*, 903 F.2d at 1345. *See also Jones*, 793 F.2d at 721 n.7 (evidence that other female employees reported being harassed by company vice president "does not bear on Jones' individual claim of sexual harassment in the absence of evidence that such incidents affected Jones' psychological well-being"). Squire's argument lacks merit.

We next consider whether the evidence Squire adduced could allow a reasonable juror to find that USAA knew or should have known of Lux's harassment of her sufficiently prior to the November 17, 1994, incident. As we have previously noted, "the type and extent of notice necessary to impose liability on an employer under

12

Title VII are the subject of some uncertainty." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 807 (5th Cir. 1996), *citing Waltman v. International Paper Co.*, 875 F.2d 468, 478 (5th Cir. 1989). Whatever uncertainty may attend our analysis, it *is* clear that a showing of constructive knowledge for Title VII purposes must be premised upon some fact or set of facts which demonstrate that "higher management" had a reasonable opportunity to be put on notice of the ongoing harassment. *Nash v. Electrospace System, Inc.*, 9 F.3d 401, 404 (5th Cir. 1993).

In almost every Title VII case which this Circuit has decided, the plaintiff has complained at least once, and often numerous times, to the responsible employer authority about the harassment. *See, e.g., Farpella-Crosby*, 97 F.3d at 807 (plaintiff complained to human resource director "frequently"); *Nash*, 9 F.3d at 403 (plaintiff complained to personnel department); *Cortes*, 977 F.2d 195, 198 (plaintiff repeatedly complained to human resources manager); *Waltman*, 875 F.2d at 478 (plaintiff complained three times to various supervisors and managers); *Jones*, 793 F.2d at 717 (plaintiff complained to company executive). We often find constructive, if not actual, notice in such situations because, assuming that the company's attempts to comply with Title VII are not a sham, a complaint in such a corporate "pipeline" often has a reasonable chance of finding its way to someone with the authority to discipline the harasser and stop the harassment. *Farpella-*

13

*Crosby*, 97 F.3d at 807; *Cortes*, 977 F.2d at 198; *Waltman*, 875 F.2d at 478. Even where the plaintiff has complained to lower level managers, however, a finding of constructive notice may be inappropriate where it cannot reasonably be inferred that the complaint should have ultimately come to the attention of the company hierarchy. *See Kilgore v. Thompson & Brock Management*, 93 F.3d 752, 754 (11th Cir. 1996) (complaint to manager of Pizza Hut did not constitute a complaint to "higher management" of employer management company); *Andrade*, 88 F.3d at 262 (complaint letter not admissible without a foundation demonstrating executive officer of employer read it). *Cf. Canutillo Independent School Dist. v. Leija*, 1996 WL 686116, *8-10, No. 95-50791 (5th Cir. Nov. 27, 1996) (complaints made by student to classroom teacher not imputable to school administration);

In the absence of any prior complaint, a plaintiff "can demonstrate constructive notice by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge." *Waltman*, 875 F.2d at 478 (citations omitted) (internal quotation marks omitted). *See also Spicer*, 66 F.3d at 710; *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir. 1988). The "pervasiveness" analysis involved here is distinct from that involved in determining the existence of a "hostile work environment"; the latter analysis considers the breadth of the harassing conduct to glean its effect on the

14

plaintiff's work environment, while the former inquiry examines whether the widespread nature of the harassment made it more likely to be noticed by the employer.[5] In considering whether the conduct was pervasive enough to put the employer on notice, constructive knowledge can typically be premised upon incidents that are witnessed by high-ranking supervisory employees because the knowledge of such individuals is more readily imputed to the employer.[6] *See Splunge v. Shoney's, Inc.*, 97 F.3d 488, 490 (11th Cir. 1996); *Andrade v. Mayfair Management, Inc.*, 88 F.3d 258, 262 (4th Cir. 1996); *Baker*, 903 F.2d at 1345. *See also Waymire*, 86 F.3d at 428 (incident occurred in front of duty sergeant, who reported it to higher level police personnel). Whether the harassment occurs in front of co-workers or lower level supervisors is also a factor to be considered, although its probative weight depends, again, on the probability that the observers will relate what they witnessed to someone in higher management. *Splunge*, 97 F.3d at 490; *Nash*, 9 F.3d at 404. In addition, the proximity of higher management to the locations where the harassment occurred

---

[5] The latter does not necessarily embrace the former, for if it did there would, in effect, be strict liability for hostile environment sexual harassment.

[6] The instant case is a perfect example; Lux's outrageous behavior on November 17 was observed, at least in part, by management staff. That same day a corporate executive, Dinstel, was notified, Lux was suspended and barred from entering the building, and an investigation was begun. Lux was terminated just over one week later.

15

may be sufficient, since juxtaposition of the two increases the likelihood that harassing incidents were observed by members of the company hierarchy. *Kotcher*, 957 F.2d at 64. Finally, tangible manifestations of the harassment, such as graffiti or widely circulated documents or recordings, may increase the opportunity for higher management to learn of the harassing behavior. *See Waltman*, 875 F.2d at 478. While other factors may be relevant to the inquiry, the ultimate question remains whether the totality of the circumstances are such that it could reasonably be found that USAA should have been aware of Lux's alleged harassment of Squire sufficiently before November 17, 1994. *Vance*, 863 F.2d at 1512-1513; *Jones*, 793 F.2d at 720 (citation omitted).

Applying these principles to the record before us, we conclude that Squire has not made out a *prima facie* case of USAA's actual or constructive knowledge. While Squire's deposition recounts that many of the harassing incidents occurred in front of "Bessie" and Laura Calderon, it does not relate with any specificity the content of Lux's comments on those particular occasions nor suggest that either of Squire's co-workers would have been inclined to complain to higher management.[7] While Squire also asserts that Lux asked her questions about her dating life at "unit meetings," there is no

---

[7] Affidavits or deposition testimony from either "Bessie" or Calderon might have been helpful in this instance, indicating how widespread knowledge of the harassment was and whether they personally might have relayed it to higher management. Such evidence is, however, conspicuously absent from the record.

evidence regarding who attended such meetings and no showing of the effect of these comments on the meeting attendees. Additionally, there is no evidence that any manager ever witnessed Lux's behavior and no evidence regarding the frequency with which higher management visited Squire's workplace.[8] USAA had in place a system for reporting sexual harassment which Squire knew about but declined to utilize. The limited facts adduced by Squire, read in the light most favorable to her, simply do not suffice to reasonably support a finding that in the absence of a complaint the higher management of USAA should have known of Lux's harassment of Squire prior to November 15, 1994. The district court did not err by dismissing Squire's hostile workplace environment claim.

In a related vein, Squire contends that the period between the November 17 incident and Lux's termination on November 28, 1994, was overly drawn out, causing her additional mental anguish, and thus did not comprise a "prompt remedial response" by USAA. We find this contention insubstantial. During this period, Squire never had any contact whatever with, or even saw, Lux. As soon as Lux's behavior became known to it, the higher management of USAA immediately launched an investigation into the harassment of

---

[8]     Belko, of course, was informed by Squire on November 15, 1994, of Lux's conduct. Belko vowed to remain temporarily silent, however, out of respect for Squire's express request that he do so until she could consider the matter further. Squire does not contend that her voluntary election to hold her complaint in abeyance should be considered in determining whether the company hierarchy had notice of the harassment.

17

Squire. *Compare Spicer*, 66 F.3d at 710. The investigation of Lux took only four working days to complete, a paradigm of promptness under the circumstances. *Waymire*, 86 F.3d at 429. USAA in this case acted quickly and efficiently in dealing with Lux's sexual harassment.[9] *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794-795 (5th Cir. 1994).

Finally, Squire appeals the district court's finding that her state law tort claims are precluded by the Texas workers' compensation exclusive remedy provision barring negligence actions against employers, like USAA, subject to the Workers' Compensation Act. Tex. Lab. Code Ann. § 408.001. Squire contends that these claims, although pleaded as negligence, are in fact allegations of intentional torts which are not subject to the exclusivity provision. *See Reed Tool Co. v. Copelin*, 689 S.W.2d 404 (Tex. 1985). Squire's argument is disingenuous. Paragraph 14 of Squire's complaint charges USAA with acting "in a *negligent* manner" in Lux's hiring and employment, and avers further that "each *negligent* act or omission" by USAA caused Squire's injuries. Under

---

[9] In particular we find no merit to Squire's contention that the company's retention of Pinkerton security to guard her and her family pending the outcome of the investigation unduly frightened her. The company was placed in a position where it could either not provide her security, provide her security but not tell her about it, or proceed as it did. The first course could conceivably have placed Squire in real danger, while the second might have frightened her further had she observed strange men surveilling her premises. The company wisely proceeded with the third course of action; any fear which ensued on Squire's part was not the fault of the company.

Texas law, "[t]he fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is the specific intent to inflict injury." *Prescott v. CSPH, Inc.*, 878 S.W.2d 692, 695 (Tex.App.—Amarillo 1994) (citations omitted). Under Federal Rule of Civil Procedure 9(b), intent or other conditions of the mind must be averred in the pleadings. *Compare Castleberry v. Goolsby Building Corp.*, 617 S.W.2d 665, 666 (Tex. 1981) (under Texas rules of pleading allegations of "gross, wanton, and willful negligence" are "insufficient to give the opposing attorney fair notice that this cause of action was for an 'intentional injury'"). Squire failed to properly plead an intentional tort and did not move in the district court to amend those pleadings; accordingly, her state law claims are barred by the workers' compensation exclusivity provision. In any event, the summary judgment evidence is wholly insufficient to sustain a finding that USAA had any intent to inflict injury on Squire.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

19